**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS -
HOUSTON DIVISION**

| | |
|---|---|
| **JOAN R. M. BULLOCK,** | |
| Plaintiff, | |
| v. | **CIVIL ACTION NO. 4:22-cv-3223** |
| **THE BOARD OF REGENTS OF TEXAS SOUTHERN UNIVERSITY, ALBERT H. MYRES, MARC C. CARTER, PAMELA A. MEDINA, JAMES M. BENHAM, CAROLINE BAKER HURLEY, STEPHANIE D. NELLONS-PAIGE, RON J. PRICE, MARILYN A. ROSE, MARY EVANS SIAS, all in their individual and official capacities; LILLIAN B. POATS, individually and in her official capacity as Acting Provost of Texas Southern University; YOLANDA N. EDMOND, individually and in her official capacity as Senior Associate Vice President for Human Resources; and LESIA L. CRUMPTON-YOUNG, individually and in her official capacity of President of Texas Southern University,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF**

Plaintiff Joan R. M. Bullock ("Bullock") brings this action against Defendants THE BOARD OF REGENTS OF TEXAS SOUTHERN UNIVERSITY, ALBERT H. MYRES, MARC C. CARTER, PAMELA A. MEDINA, JAMES M. BENHAM, CAROLINE BAKER HURLEY, STEPHANIE D. NELLONS-PAIGE, RON J. PRICE, MARILYN A. ROSE, MARY EVANS SIAS, all in their individual and official capacities; LILLIAN B. POATS, individually and in her official capacity as Acting Provost of Texas Southern University; YOLANDA N.

EDMOND, individually and in her official capacity as Senior Associate Vice President for Human Resources; and LESIA L. CRUMPTON-YOUNG, individually and in her official capacity of President of Texas Southern University, to address denial of procedural and substantive due process and dismissal from her tenured position without cause, in violation of the Due Process Clause and the Privileges and Immunities Clause of the Fourteenth Amendment, made applicable through 42 U.S.C. § 1983.[1]

## 1. **INTRODUCTION**

1.1.    On July 8, 2019, Plaintiff was hired as a tenured Professor and Dean of Texas Southern University's Thurgood Marshall School of Law (the "Law School"). Plaintiff was the first female Dean in the 75-year history of the Law School.

1.2.    Under Plaintiff's leadership, the Law School returned to full ABA compliance. Plaintiff cleaned up ethical and criminal scandals that she inherited, brought in two increasingly strong classes, and advocated tirelessly for the Law School's funding and future.

1.3.    On June 15, 2022, Plaintiff was stripped of her Deanship and her tenured faculty position without cause. She was summarily removed from teaching classes. Plaintiff was denied a hearing and opportunity to challenge the decision to terminate her, without due process of law and in violation of her constitutional rights as a tenured faculty member. Plaintiff was terminated and stripped of her tenure and faculty position without good cause, without a rational basis, arbitrarily and capriciously in violation of her constitutional rights as a tenured faculty member.

---

[1] On July 27, 2022, Plaintiff filed a Charge of Discrimination against Texas Southern University with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWC-CRD"). Once Plaintiff receives a Right to Sue from these agencies, she will amend this Complaint to include these claims.

2

1.4. On two separate occasions over the last several weeks, Plaintiff has asked TSU to grant her a hearing and opportunity to respond to the allegations against her as is her right under TSU's bylaws and regulations promulgated under the laws of the State of Texas. TSU refused.

1.5. Plaintiff seeks injunctive relief reinstating her to her former position as a tenured faculty member, and costs and attorney's fees incurred in this action. In the alternative, Plaintiff may seek damages, including lost compensation, lost benefits, compensatory damages, damages for emotional distress and harm to her reputation.

## 2. JURISDICTION AND VENUE

2.1. The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331. The jurisdiction of this Court is invoked pursuant to the Fourteenth Amendment of the United States Constitution, and the subsequent remedial legislation enacted pursuant thereto, as codified at 42 U.S.C. § 1983.

2.2. Venue is appropriate in the United States District Court for the Southern District of Texas because the events that gave rise to this cause of action occurred in Harris County, Texas.

## 3. PARTIES

3.1. Plaintiff Joan R. M. Bullock is a resident of Harris County, Texas.

*The Defendant University and TSU Defendants*

3.2. Defendant Texas Southern University Board of Regents is a Texas public university, commonly referred to as Texas Southern University (hereinafter "TSU," "Board of Regents" and/or the "University"). According to the Bylaws of the Texas Southern University Board of Regents, Texas law designates Texas Southern University as a coeducational institution of higher education and gives the Board of Regents the power and authority to govern the

University. The Board of Regents is expressly directed by state law to enact bylaws, rules, and regulations, for the successful management and government of the institution.

3.3. According to Section 1.2(b) of the Bylaws of the Texas Southern University Board of Regents, "the Board shall provide the policy direction for the institution including adopting or approving policies required by law […] and ensure that the policies and processes of the University remain current and are properly implemented."

3.4. According to Section 1.2(d) of the Bylaws of the Texas Southern University Board of Regents, each member of the Board has the legal responsibilities of a fiduciary and is responsible for ensuring "that they act, in the performance of their duties, in compliance with the constitution and state and federal laws[.]"

3.5. According to Section 7.1 of the Bylaws of the Texas Southern University Board of Regents, the Board "shall appoint" the President, "who shall be the Chief Executive Officer of the University, and who shall hold office at the pleasure of the Board." "The President is responsible to the Board of Regents for the administration and for the management and control of the entire University, in accordance with Board Policy and direction."

3.6. At all times relevant to the actions described in this Complaint the Defendants were acting under color of law.

3.7. At all times material to this Complaint, Defendants **ALBERT H. MYRES, MARC C. CARTER, PAMELA A. MEDINA, JAMES M. BENHAM, CAROLINE BAKER HURLEY, STEPHANIE D. NELLONS-PAIGE, RON J. PRICE, MARILYN A. ROSE, MARY EVANS SIAS** were members of TSU's Board of Regents and are all residents of Texas. On information and belief, each of these Defendants approved, facilitated, and/or voted for Bullock's firing. Defendants Myres, Carter, Medina, Benham, Baker Hurley,

4

Nellons-Paige, Price, Rose, and Sias may be served with process at the following address: Texas Southern University, 3100 Cleburne Street, Hannah Hall, Suite 115, Houston, Texas 77004.

3.8. At all times material to this Complaint, Defendant **LILLIAN B. POATS**, an individual and resident of Texas, is and was Acting Provost at Texas Southern University. Defendant Poats supervised, facilitated, recommended and/or approved Bullock's firing. Defendant Poats may be served with process at the following address: Texas Southern University, 3100 Cleburne Street, Houston, Texas 77004.

3.9. At all times material to this Complaint, Defendant **YOLANDA N. EDMOND**, an individual and resident of Texas, is and was Senior Associate Vice President for Human Resources at Texas Southern University. Defendant Edmond supervised, facilitated, recommended and/or approved Bullock's firing. Defendant Edmond may be served with process at the following address: Texas Southern University, 3100 Cleburne Street, Houston, Texas 77004.

3.10. At all times material to this Complaint, Defendant **LESIA L. CRUMPTON-YOUNG**, an individual and resident of Texas, is and was President of Texas Southern University. Defendant Crumpton-Young supervised, facilitated, recommended and/or approved Bullock's firing. Defendant Crumpton-Young may be served with process at the following address: Texas Southern University, 3100 Cleburne Street, Hannah Hall, Suite 200, Houston, Texas 77004.

## 4. FACTS

4.1. Plaintiff Bullock has over thirty years of experience in the legal academy as a professor of law and over a decade of decanal service. Prior to her appointment at TSU, Plaintiff was a tenured full professor at The University of Toledo College of Law from 1999 to 2003;

Florida A&M College of Law from 2002 to 2017; and at Thomas Jefferson School of Law from 2017 to 2018. From 2012 to 2016, in addition to her tenured faculty position, Plaintiff served as Associate Dean at Florida A&M University College of Law. From 2017 to 2018, in addition to her tenured faculty position, Plaintiff served as President and Dean of Thomas Jefferson School of Law.

4.2. On June 12, 2019, TSU appointed Bullock as "Dean for the Thurgood Marshall Law School, with tenured faculty status at the rank of Professor within the School of Law," "effective July 8, 2019." *See* Exhibit A.

4.3. Via letter on June 12, 2019, TSU informed Bullock that she was being offered the appointment of "Dean for the Thurgood Marshall Law School, with tenured faculty status at the rank of Professor within the School of Law."

4.4. On June 17, 2019, Bullock accepted the appointment as "Dean for the Thurgood Marshall Law School, with tenured faculty status at the rank of Professor within the School of Law." *See* Exhibit A. Bullock began her tenure as Dean on July 8, 2019.

4.5. Bullock was the first female Dean in the 75-year history of the Law School.

4.6. Under Texas Education Code § 51.942, TSU's Board of Regents is required to promulgate policies concerning the evaluation and due process rights of tenured faculty. These policies are contained in Texas Southern University's Faculty Manual.

4.7. Further, according to Section 3 of Texas Southern University's Faculty Manual, promulgated under the authority of the Board of Regents pursuant to Texas law, "Texas Southern University adheres to the 1940 Statement of Principles on Academic Freedom and Tenure of the Association of American Colleges and Universities and the American Association of University Professors."

4.8. According to the Faculty Manual as well as the AAUP's Statement of Principles on Academic Freedom, academic freedom "shall not be abridged or abused."

4.9. Texas Education Code §51.942(b) provides that each governing board of an institution of higher education shall adopt rules and procedures regarding a performance evaluation process "for all faculty tenured at the institution."

4.10. Texas Education Code §51.942(c) prescribes specific requirements for the evaluation process, including that "the process incorporate commonly recognized academic due process rights, including notice of the manner and scope of the evaluation, the opportunity to provide documentation during the evaluation process, and, before a faculty member may be subject to disciplinary action on the basis of an evaluation conducted pursuant to this section, notice of specific charges and an opportunity for hearing on those charges[.]"

4.11. Texas Education Code §51.942(c) further prescribes that tenured faculty "may be subject to revocation of tenure or other appropriate disciplinary action if incompetency, neglect of duty, or other good cause is determined to be present."

4.12. At the time of Bullock's arrival at TSU, multiple compliance issues demanded immediate remediation.

4.13. Prior to Bullock's arrival, the Law School, under the seriatim leadership of two seasoned deans and an acting dean, had failed to demonstrate compliance with ABA Standards within the required two-year period.

4.14. Bullock began her Deanship during the one-year extension granted by the ABA. Under Bullock's leadership, the Law School returned to full ABA compliance before the expiration of the one-year deadline.

4.15. During her tenure, Bullock cleaned up ethical and criminal scandals that she inherited. In September 2019, Bullock terminated the Associate Dean of Admissions for admissions improprieties, retained Michelle Rahman as a consultant to review the Law School's Admissions Department, and later hired Rahman as Associate Dean of Admissions. Rahman's review uncovered instances of gross mismanagement and led to a further investigation that uncovered the pay-for-admittance admissions scandal within the Admissions Department. This investigation ultimately led to the termination of TSU President Austin Lane. Bullock directed Rahman and the Admissions Department to implement a system that would require the use of admissions best practices to preclude further mismanagement and theft. Under this direction, the Admissions Department moved to a paperless admissions application system; required all applications to be submitted through the Law School Admissions Council (LSAC) portal; eliminated the Law School's manual entry of successful applicants into Banner; worked with the University's Information Technology Department to create an online portal for seat deposits, thus eliminating cash being received by admissions personnel; required financial aid to use the cost of attendance to prohibit students from receiving money in the form of scholarship or other financial assistance in excess of the cost of being a student at the Law School; and created a scholarship matrix by which scholarships were awarded based upon objective entering criteria to entering students. After Rahman resigned for health reasons, however, the University prevented Bullock from retaining Rahman as a short-term, limited hours consultant to provide support and answer any questions the inexperienced two-person admission staff had in operating within the best practice infrastructure Rahman had implemented.

4.16. Bullock brought in two increasingly strong entering classes. Under Bullock's leadership, admissions procedures were put in place to ensure the Law School admitted only

8

those who, after a thorough, holistic review of their application showed evidence causing the Law School to believe they would be successful in law school and subsequently in passing the Bar exam in the state of their choice. The Admissions Department provided data to LSAC to obtain a three-year correlation study produced by LSAC of the Law School's student performance in the first year and the predictive value of their objective credentials when applying to the Law School. This study, typically produced annually for law schools, had not been done for the Law School for several years, Admissions staff utilized this three-year correlation study in aggressively recruiting applicants in in-person forums and targeted email campaigns. Information from the study guided review of the objective criteria of LSAT score and undergraduate grade point average (UGPA) of applicants consistent with faculty-determined admission indices. Admissions decisions were timely made, and all admitted students received the high touch experience of a telephone call from the Associate Dean of Admissions prior to receiving a formal letter of admission. Scholarships are offered by the Admissions Department, after consultation and approval of the proposed plan by the Dean of the Law School. The Admissions Department follow a proscribed matrix, without approved deviation, designed to attract and reward the Law School's most sought-after applicants in a deliberate attempt to raise the academic profile of the Law School. Scholarships are awarded to first-year students for no more than six semesters, not including summer semesters. Scholarship recipients retain the scholarship for all three years if the student remains in good academic and good conduct standing. All scholarship awards are managed and administered through the Financial Aid Department.

    4.17.   None of the classes that have currently taken the Bar have been admitted under Bullock. The two classes that Bullock brought in will be eligible to sit for the Bar, at the earliest,

February 2023. The first-time bar pass percentage of the two graduating classes prior to Bullock's arrival are 45.19 per cent and 55.77 per cent for the 2018 and 2019 graduating classes, respectively. During Bullock's tenure as Dean, the 2020 and 2021 graduating classes had first-time bar pass rate of 51.74 per cent and 53.45 per cent respectively, a strong showing in light of the pandemic's disproportionate impact on the Law School's student body.

  4.18. Bullock implemented steps to help at-risk students progress and regain good academic standing. When Bullock arrived in 2019, at risk students were not notified formally of their precarious academic standing nor were those who were not in good standing (below 2.0 cumulative grade point average) formally placed on probation. Consequently, no special programs were instituted for these students nor were they required to forego extracurricular activities. With the assistance of the Academic Success Department, Bullock implemented a formal program and at-risk notification system for students who were failing or at risk of failing law school. Students placed on academic probation were notified by letter which provided the terms and conditions of which they were required to comply in order to regain good standing. The students were required to sign the letter as acknowledgment of the probationary conditions. Second-year at risk students (students with a law school grade point average of 2.0-2.5 inclusive, received an email requiring that they attend a mandatory 2L skills academy every other Tuesday. Under Bullock's leadership, the tutoring program for first-year students was revamped to include skills in the mandatory tutoring program and faculty were provided information of the skills introduced for faculty reinforcement in the doctrinal courses.

  4.19. Bullock fought tirelessly for the funding that is the Law School's, and advocated continuously regarding the steps the Law School needs to take to keep its accreditation and to ensure Thurgood Law's success. Bullock was repeatedly prevented from advertising and hiring

personnel included in the Law School's budget and essential for the proper operation of a law school accredited by the American Bar Association.

4.20. Despite this, on June 15, 2022, TSU terminated Bullock and stripped her of her tenure without cause.

4.21. On June 10, 2022, Acting Provost Poats, together with Vice President Edmond and General Counsel Hao Le, met with Bullock, stated that the University was "taking a different direction," and presented her with a written severance agreement terminating her employment at TSU. Bullock refused to sign the agreement and objected that it was unacceptable and that she was a tenured faculty member.

4.22. When Bullock refused to sign, Edmond and Le informed Bullock that if she refused to sign the agreement, she would be terminated from the University effective on June 10, 2022.

4.23. When Bullock protested that she was tenured, Poats stated that they "believed" they had cause. Poats brought up that Bullock co-taught an experimental online asynchronous class, as well as "Michelle Rahman." Neither allegation or allusion constituted anything close to good cause to terminate Bullock or strip Bullock of tenure.

4.24. Despite Bullock's protests that she was tenured, General Counsel Le sent Bullock a letter on June 15, 2022, terminating her from further employment at the University and compelling Bullock's "complete and final departure from the University effective today."

4.25. Throughout her three year tenure at TSU, Bullock has served, in addition to her role as Dean, as a faculty member in the Law School, having taught Law Practice Management, Digital Crimes and Torts, Torts I, and Torts II. Bullock's termination as a tenured faculty member on June 15, 2022 resulted in Bullock being summarily removed from teaching her

11

summer course, Law and Artificial Intelligence, which had started on June 6, 2022. Interest in Bullock's course was very high, with enrollment of over 80 students necessitating the course being divided in two sections.

4.26. Defendants have since announced Bullock's sudden surprise firing to the media while publicly "declining to comment"—leaving the false impression that Bullock engaged in undisclosed wrongdoing.

4.27. As Defendants well know, this is not the case.

4.28. As Defendants are aware, Defendants handicapped Bullock in her role as Dean and denied her the ability to use funds belonging to the Law School.

4.29. Bullock reported concerns regarding decisions taken by TSU which have the potential to affect the Law School's ability to remain accredited.

4.30. TSU's treatment of Bullock stands in stark contrast to the treatment of every one of her male predecessors in the role of Dean.

4.31. Several of Bullock's recent male predecessors departed the position of Dean under legal and ethical clouds including censure from the ABA, loss of full accreditation and inability to regain full accredited status, and public lawsuits against them. However, every one of the seasoned male deans remained on the faculty after departing the position of Dean.

4.32. In stark contrast to TSU's treatment of all of the male Deans, in exchange for Bullock's efforts, hard work, and avoidance of controversy, Defendants fired Bullock without cause and made her into a public scapegoat.

4.33. Since Bullock's termination, TSU has denied Bullock her right, as a tenured professor, to a hearing and opportunity to challenge TSU's decision to violate her tenure rights and terminate her without good cause.

4.34. On June 20, 2022, Bullock sent a complaint that she was being treated differently from male Deans and discriminated against because of her gender to Defendant Poats, Defendant Edmond, and General Counsel Hao Le.

4.35. In the same communication, Bullock requested a hearing before the Faculty Hearing Committee regarding the decision to terminate her and strip her of tenure. Bullock is entitled to the hearing she requested under the procedures and policies contained in TSU's Faculty Manual and under state law.

4.36. Defendants failed and refused to respond.

4.37. On June 27, 2022, after hearing nothing, Bullock sent a second request for a hearing to Defendant Poats, Defendant Edmond, and General Counsel Hao Le.

4.38. This time, Acting Provost Poats merely directed Le to respond. However, Bullock still received no response.

4.39. Unlike TSU's treatment of all of Bullock's male predecessors, TSU terminated Bullock from its faculty, violated her tenure rights, publicly damaged her reputation, and refused her an opportunity to vindicate herself.

4.40. Defendants' actions in stripping Bullock of her tenure and dismissing her without cause constitute denial of procedural and substantive due process, in violation of the Due Process Clause and the Privileges and Immunities Clause of the Fourteenth Amendment, made applicable through 42 U.S.C. § 1983. The same actions constitute breach of the contract between Bullock and TSU. Further, Defendant's actions constitute retaliation for Bullock's constitutionally protected speech, in violation of the First Amendment, made applicable through 42 U.S.C. § 1983.

## 5. CAUSES OF ACTION

**A.     42 U.S.C. §1983 - Violation of Plaintiff's Right to Procedural and Substantive Due Process Under the Fourteenth Amendment Due Process Clause and Privileges and Immunities Clause.**

5.1.    Plaintiff incorporates by reference all preceding facts as set forth above in Paragraphs 4.1 through 4.40.

5.2.    Bullock possessed a property interest in her membership in TSU's tenured faculty, which she was deprived of when Defendants wrongfully terminated her and stripped her of tenure without cause.

5.3.    Bullock was entitled, under state law and TSU's procedures and policies enacted pursuant to state law, to a due process hearing and opportunity to challenge the termination.

5.4.    Defendants denied Bullock due process, including any hearing or opportunity to challenge the termination. Defendants deprived Bullock of a property interest and a liberty interest in violation of her rights under the Fourteenth Amendment of the Constitution of the United States.

5.5.    Bullock was entitled, under state law and TSU's procedures and policies enacted pursuant to state law, to continue in her tenured position unless good cause existed for her removal.

5.6.    Defendants terminated Bullock and stripped her of her tenure rights without good cause. Defendants' decision to terminate Bullock and strip her of tenure was arbitrary and capricious, depriving Bullock of a property interest and liberty interest in violation of her rights under the Fourteenth Amendment of the Constitution of the United States.

5.7. All discriminatory acts alleged against Defendants were taken under color of the laws and regulations of the State of Texas.

5.8. As a direct result of the denial of due process procedures and/or the arbitrary and capricious decision to terminate Bullock and strip her of tenure, Bullock has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, the loss of her constitutionally protected tenured appointment at TSU, emotional distress, and harm to her career, her professional reputation, and her standing in the academic community.

**B.    BREACH OF CONTRACT.**

5.9. Plaintiff incorporates by reference all preceding facts as set forth above in Paragraphs 4.1 through 4.40.

5.10. Defendants tendered an offer of employment at TSU, in the position of Dean of the Law School and Full Professor of the Law School with tenure, subject to the provisions of the regulations governing TSU and its rules, regulations, and procedures, which include TSU's Faculty Manual.

5.11. Plaintiff accepted the offer.

5.12. Under TSU's procedures and policies enacted regarding tenure at TSU, Plaintiff was entitled to a due process hearing and opportunity to challenge the termination.

5.13. Under TSU's procedures and policies enacted regarding tenure at TSU, Plaintiff was entitled to continue in her tenured position unless good cause existed for her removal.

5.14. Defendants breached their contract with Plaintiff by denying her a hearing and opportunity to challenge the termination decision, and by terminating Plaintiff without good cause.

15

5.15. As a direct result of the discrimination, Bullock has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, the loss of her constitutionally protected tenured appointment at TSU, emotional distress, and harm to her career, her professional reputation, and her standing in the academic community.

**C. FIRST AMENDMENT RETALIATION.**

5.16. Plaintiff incorporates by reference all preceding facts as set forth above in Paragraphs 4.1 through 4.40.

5.17. Plaintiff reported matters of public concern, including matters which potentially impact the Law School's ability to remain accredited, including to the Provost and President of TSU.

5.18. Plaintiff was terminated and her tenure revoked because of her protected speech regarding matters of public concern.

5.19. As a direct result of the retaliation, Bullock has sustained and continues to sustain substantial, immediate and irreparable harm, including lost income, lost benefits, the loss of her constitutionally protected tenured appointment at TSU, emotional distress, and harm to her career, her professional reputation, and her standing in the academic community.

## 6. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF

*Request for Temporary Restraining Order*

6.1. If Defendants are not immediately restrained from enforcing their unconstitutional termination of Plaintiff and ordered to reinstate Plaintiff in her former position as a tenured faculty member, Plaintiff will continue to suffer imminent and irreparable injury for which there is no adequate remedy at law. Despite Plaintiff repeatedly contacting Defendants since her

termination to ask that they grant her her due process rights and reinstate her in her position, Defendants have entirely failed and refused to respond.

6.2. There is substantial likelihood that Plaintiff will prevail on the merits. As noted above, Defendants' actions were arbitrary, capricious, an abuse of discretion, and taken in willful breach of state law and TSU's rules, procedures, and policies.

6.3. The threatened harm to Plaintiff outweighs the harm that a temporary restraining order would inflict on Defendants. Plaintiff has a right to her constitutionally protected due process protections and property interests in her continued tenure. Defendant's violations of Plaintiff's constitutionally protected rights are causing, and will continue to cause, imminent and irreparable injury to Plaintiff's constitutional entitlements of procedural and substantive due process, to her academic career, to her professional reputation, and to her standing in the academic community.

6.4. Plaintiff asks the Court to enter a temporary restraining order reinstating Plaintiff in her tenured faculty position and restraining Defendants from further enforcement of their unconstitutional violation of Plaintiff's due process rights, and asks the Court to set Plaintiff's request for a preliminary injunction for a hearing at the earliest possible time.

*Request for Injunctive and Declaratory Relief*

6.5. Plaintiff applies for and moves this Court under Rule 65 of the Federal Rules of Civil Procedure to issue a Preliminary Injunction and thereafter a Permanent Injunction enjoining her termination and revocation of her tenure in violation of her constitutional rights. Plaintiff

seeks a temporary and permanent injunction against Defendants' continued violation of her constitutional rights. Plaintiff sues for reinstatement, injunctive, and equitable relief.[2]

6.6. If maintained, Defendants' termination of Plaintiff and denial of her tenure rights would continue Defendants' intentional, arbitrary, and capricious violation of Plaintiff's constitutional due process rights and deprivation of Plaintiff's property interest without due process or cause. Therefore, Plaintiff seeks a declaratory judgment that her termination was invalid and unenforceable pursuant to the Constitution of the United States and federal and state law.

## 7. ATTORNEYS' FEES

7.1. Defendants' actions and conduct as described herein and the resulting harm and threatened harm to Plaintiff have required Plaintiff to retain the services of SHELLIST LAZARZ SLOBIN LLP, 11 Greenway Plaza, Suite 1515, Houston, Texas 77046, in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees as is allowed under Section 1983 and 42 U.S.C. § 1988, as well as under state law on her breach of contract claim.

## 8. JURY DEMAND

8.1. Plaintiff hereby demands a jury.

## 9. PRAYER

9.1. Plaintiff respectfully requests that this Court order the following relief preliminarily, and after a full trial on the merits, permanently:

---

[2] In the alternative to injunctive and equitable relief, Plaintiff will seek damages against Defendants in their individual capacities, including for past and future wages, emotional distress damages, reputational damages, compensatory damages, punitive damages, attorney's fees, and taxable court costs.

9.2. Grant Plaintiff a due process hearing on the merits of her termination to which she is entitled;

9.3. Reinstate Plaintiff in her former position as a tenured professor of law at TSU;

9.4. Declare Plaintiff's termination to be invalid and unenforceable;

9.5. Grant Plaintiff her reasonable and necessary attorney's fees, expenses and costs of court;

9.6. In the alternative, grant Plaintiff damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, front pay, lost past and future benefits, compensatory damages, including damages for emotional distress and reputational harm;

9.7. Pre-judgment and post-judgment interest at the highest legal rate until paid; and

9.8. Such other and further relief, at law or in equity, general or special to which Plaintiff may show herself justly entitled.

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN LLP**

*/s/ Todd Slobin*
TODD SLOBIN
State Bar No. 24002953
tslobin@eeoc.net
DORIAN VANDENBERG-RODES
State Bar No. 24088573
drodes@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile:  (713) 621-0993

**ATTORNEYS FOR PLAINTIFF JOAN BULLOCK**

**VERIFICATION**

I have reviewed the foregoing Plaintiff's Original Complaint and Application for Temporary Restraining Order and Injunctive Relief. The facts stated therein are within my personal knowledge and are true and correct.

*/s/ Joan R. M. Bullock*
Joan R. M. Bullock

SWORN TO AND SUBSCRIBED before me by the said Joan R. M. Bullock, on this 21 day of September, 2022.

*/s/ Veronica Vasquez*
Notary Public, in and for the
State of Texas

VERONICA VASQUEZ
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 03/17/2024
NOTARY ID 12528221-0

20